UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
McALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | M-21-1785 |
| v. | § § | |
| CHISMERE MALLARD | § | |

## CRIMINAL INFORMATION

**THE UNITED STATES ATTORNEY CHARGES:**

At all times material to this Information:

### The Medicare Program

1. The Medicare program ("Medicare") is a federal health care program providing benefits to persons who are over the age of sixty-five and some persons under the age of sixty-five who are blind or disabled. Medicare is administered by the Centers for Medicare and Medicaid Services, a federal agency under the United States Department of Health and Human Services.

2. Medicare is a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

### The Defendant and Co-Conspirators

3. **Chismere Mallard** was a resident of Hidalgo County, Texas.

4. CLS Devices, LLC, was a Texas limited liability company, of which **Chismere Mallard** was the Managing Member.

5. Doctor-1 was a licensed physician in the State of Texas and a resident of Hidalgo County, Texas.

6. Clinic-1 was a medical clinic operated by Doctor-1, located and operating within Hidalgo County, Texas, and elsewhere.

7.  Clinic-Employee-1 was a resident of Hidalgo County, Texas and an employee of Clinic-1.

8.  Clinic-Employee-2 was a resident of Hidalgo County, Texas and an employee of Clinic-1.

9.  Individual-1 was a resident of Hidalgo County, Texas and the adult child of Doctor-1.

## COUNT ONE
## CONSPIRACY TO SOLICIT OR RECEIVE ILLEGAL REMUNERATIONS
## (18 U.S.C. § 371 and 42 U.S.C. § 1320a-7b(b)(2))

10.  Beginning in or about 2014 and continuing through in or about 2019, the exact dates being unknown, in the McAllen Division of the Southern District of Texas, and elsewhere, defendant,

**CHISMERE MALLARD**

knowingly and willfully did combine, conspire, confederate and agree with others known and unknown, to commit certain offenses against the United States, that is, to violate the Anti-Kickback statute, Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, specifically, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash or in kind, in return for referring an individual for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and in return for ordering, or arranging for or recommending ordering any good, service, or item for which payment may be made in whole or in part by Medicare.

## OBJECT OF THE CONSPIRACY

11.  The object and purpose of the conspiracy and scheme was for the defendant **Chismere Mallard**, his co-conspirators, and others known and unknown, to unlawfully enrich

themselves through an illegal kickback scheme.

## MANNER AND MEANS

12. The manner and means by which **Chismere Mallard** and his co-conspirators sought to accomplish the object of the conspiracy included, but were not limited to, the following:

   a. In or around 2014, **Chismere Mallard** entered into an arrangement with Doctor-1 and Individual-1, the adult son of Doctor-1, whereby Doctor-1 would send orders for toxicology tests to toxicology testing companies associated with **Chismere Mallard** in exchange for kickbacks.

   b. Beginning in or around 2014 and continuing through in or around 2019, **Chismere Mallard** secured positions as account representative with various toxicology testing companies. **Chismere Mallard** specifically sought out positions with toxicology testing companies that would compensate based on claims paid to toxicology testing companies from toxicology tests ordered by Doctor-1.

   c. Doctor-1 and Individual-1 then directed toxicology tests for patients of Clinic-1 to toxicology testing companies where **Chismere Mallard** was an account representative.

   d. In order facilitate the directing of orders for toxicology tests to toxicology testing companies that would generate payments to **Chismere Mallard** and, in turn Individual-1 and Doctor-1, Individual-1 directed **Chismere Mallard** to also make kickback payments to Clinic-Employee-1 and Clinic-Employee-2.

   e. In exchange for the kickback payments, and with the approval of Individual-1 and Doctor-1, Clinc-Employee-1 and Clinic-Employee-2 directed toxicology tests ordered by Doctor-1 to toxicology testing companies associated with **Chismere Mallard**.

   f. In or around 2016, Individual-1 approached **Chismere Mallard** about an

additional kickback scheme involving prescriptions for compound medication to a pharmacy ("Pharmacy-1"). Individual-1 informed **Chismere Mallard** that Doctor-1 would write prescriptions for compound medication that would be sent by Clinic-Employee-1 and Clinic-Employee-2 to Pharmacy-1. In turn, Pharmacy-1 would pay **Chismere Mallard** a commission, out of which **Chismere Mallard** would be required to pay kickbacks to Individual-1 and Doctor-1.

g. Thereafter, Doctor-1 wrote prescriptions for compound medication, including prescriptions for beneficiaries of Federal health care programs, such as Medicare.

h. Clinic-Employee-1 and Clinic-Employee-2 coordinated the sending of prescriptions for compound medication from Doctor-1 to Pharmacy-1.

i. Pharmacy-1 filled the prescriptions from Doctor-1, and submitted claims to, and received payment from, health care programs, including Federal health care programs such as Medicare.

j. Pharmacy-1 paid **Chismere Mallard** a commission based on the amount received by Pharmacy-1 from health care programs, including Federal health care programs such as Medicare, for prescriptions written by Doctor-1.

k. Throughout the scheme, **Chismere Mallard** paid Individual-1 a percentage of commissions he received in connection with orders for toxicology testing services from Doctor-1.

l. Throughout the scheme, **Chismere Mallard** paid Doctor-1 numerous cash kickbacks in the approximate monthly amount of $1,000 in connection with the toxicology tests ordered by Doctor-1.

m. Throughout the scheme, **Chismere Mallard** paid Doctor-1 numerous cash kickbacks in the approximate monthly amount of $1,000 in connection with the prescriptions for

4

compound medication ordered by Doctor-1.

  n. Throughout the scheme, **Chismere Mallard** paid Clinic-Employee-1 and Clinic-Employee-2 numerous cash kickbacks in the approximate monthly amount of $250 each in connection with the toxicology tests and compound prescriptions ordered by Doctor-1.

  o. The toxicology tests ordered by Doctor-1 included toxicology tests for beneficiaries of Federal health care programs such as Medicare.

  p. The toxicology testing companies submitted claims to, and were paid by, Federal health care programs such as Medicare in relation to the toxicology tests ordered by Doctor-1.

  q. The compound medication prescribed by Doctor-1 included prescriptions for beneficiaries of Federal health care programs such as Medicare.

  r. Pharmacy-1 submitted claims to, and were paid by, Federal health care programs such as Medicare in relation to prescriptions ordered by Doctor-1.

  s. During, and in relation to, the kickback scheme, **Chismere Mallard** was paid approximately $766,310.49 in purported commissions for toxicology tests and prescriptions for compound medication ordered by Doctor-1.

## **OVERT ACT**

13. In furtherance of the conspiracy, and to accomplish its object and purpose, the following overt act, among others, was committed in the Southern District of Texas and elsewhere:

  a. On or about September 23, 2016, a check in the amount of $26,079.55 was paid from **Chismere Mallard's** entity, CLS Devices, to an entity belonging to Individual-1.

5

## NOTICE OF CRIMINAL FORFEITURE
## (18 U.S.C. § 982(a)(7))

Pursuant to Title 18, United States Code, Section 982(a)(7), the United States gives notice that upon Defendant's conviction of Count 1 charged in this Superseding Information, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offense.

## MONEY JUDGMENT AND SUBSTITUTE ASSETS

The United States gives notice that it will seek a money judgment against the Defendant. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exist, the United States will seek to forfeit any other property of the Defendant up to the amount of the money judgment.


JENNIFER B. LOWERY
UNITED STATES ATTORNEY

*/s/ Andrew R. Swartz*
ANDREW R. SWARTZ
ASSISTANT UNITED STATES ATTORNEY


*/s/ Asha Natarajan*
ASHA NATARAJAN
ASSISTANT UNITED STATES ATTORNEY